THE prisoner was indicted and tried in Kent county, at the October term, 1853, for the murder of William Saulsbury. *Page 503 
The case as opened for the prosecution was, that William Saulsbury was in the prisoner's house, lying on the bed asleep, when the prisoner assaulted him with a spade, struck him on the head and inflicted a wound of which Saulsbury died in about eight days. The State relied on the fact that the assault was made on a sleeping man, with a deadly weapon, and on the prisoner's declaration that "he did not care a damn if he had killed him," to show that it was a case of murder by express malice. To let in dying declarations, the State proved that the wound had penetrated the skull, and that the person who washed it removed a small part of the brain; that the deceased said "he had got his furlough — he should die, and then they would hang the poor old man, which would do him no good."
Mr. Smithers objected to any declarations as dying declarations, unless the court was first convinced that the deceased believed himself to be in a dying condition. He lived a week after this remark, and wanted liquor; and tried to get it, though he knew it would make his recovery more doubtful. (Phill. Ev., 200; Rus. Cr., 752.)
The Attorney General insisted that the declarations in this case were admissible as dying declarations, on the state of facts proved; and that the court would not now stop to hear testimony in behalf of the defendant, as to the condition of the deceased or his own opinion of his condition.
Mr. Smithers insisted on his right now to offer evidence that the deceased was up and about, and insisted on having liquor, to show that the deceased was not under any apprehension of death.
A majority of the court thought this course not proper, and that if the State established a case of declarations made under the apprehension of death, the declarations were admissible.
Judge HARRINGTON dissented.
He said it was a question of the competency of evidence — of its admissibility — a question to be tried by the court. There was at one time some doubt whether the court or jury should judge of the deceased's consciousness of his dying state, upon which the admission of his declarations depends; but it is now well settled that the court must decide this as a preliminary question. Woodcock's case, in which it was ruled otherwise, has been over-ruled by a series of cases, and it is now settled that as the declarations are not to be heard by the jury, until it is established that they were made by the deceased under a full sense of his dying condition; this state of consciousness must be established before the declarations are admitted. *Page 504 
If it may be proved, it may also be disproved. The court cannot determine a question without hearing the evidence on both sides; if any be offered. If the State may prove that Saulsbury said he had his furlough, the defendant may disprove it if he can, or may prove any state of facts which will show to the court that he was not under the immediate apprehension of death. It may be inconvenient to try such collateral questions, but they must be tried and determined to make the declarations evidence as dying declarations. The same necessity exists in every case where the competency, or admissibility of evidence depends upon preliminary facts; confessions; proof of old title papers dependent on custody; want of religious belief; and of capacity; are all examples where evidence must first be heard by the court to determine the admissibility of other evidence. In Townsend's case, where it was proved that a witness had professed such infidel principles as would disqualify him to be sworn, the court said he might call witnesses to sustain himself. In many cases of confession, the prisoner is allowed to prove threats or promises to exclude the confession; so where the rejection of negro testimony depends on the presence of a white person, the court will stop to hear that proof. And if a deed was offered in evidence, without proof of execution, depending on its age, and upon its coming from the proper custody, he thought it would be proper for the other side to contradict this by proof that it came from another custody. He concluded that the defence had the right now to show that these declarations were not made under a sense of approaching death.
The declarations were admitted.
The case for the defence was, that the prisoner was a peaceful man, living with his family, a wife and two daughters, one grown up to woman's estate, the other about ten years old. The deceased came to his house again and again, for the purpose of debauching his daughter. That though ordered from the house again and again, he persisted in coming, encouraged by the females, and in defiance of the husband and father, whose authority he set at defiance, and whose life he threatened, and carried a deadly weapon to execute his threat. That the deceased drove the prisoner from his own house, with threats that he would cut his throat from ear to ear. That on the occasion of this conflict, the prisoner came home in company with his son and found Saulsbury on the bed with his daughter; that he ordered him to get up and go away; and as he *Page 505 
was getting up, the prisoner seized the shovel and struck him one blow on the head. The defence therefore was, that the homicide was excusable.
 Verdict guilty of murder of the second degree.